UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT C. TURNER,<br><br>   Petitioner,<br><br> v.<br><br>BRIAN DUFFY,<br><br>   Respondent. | No. 2:15-cv-2356 WBS CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California prisoner proceeding with counsel with a petition for writ of habeas corpus under 28 U.S.C. § 2254. He is serving three concurrent sentences of 25 years-to-life in the California Department of Corrections and Rehabilitation imposed in Solano County on September 27, 2012. The sentences were entered after petitioner was found guilty of committing three separate lewd and lascivious acts prohibited by California Penal Code § 288. On May 10, 2017, claim one in petitioner's habeas petition was dismissed; three claims remain. For the reasons set forth below, the court recommends that all three claims be rejected.

I. Background

On direct appeal, the California Court of Appeal, First Appellate District, summarized the facts presented at petitioner's trial and the proceedings relevant to petitioner's claims as follows:

/////

/////

1

The victim, D.A., was born in 1999.[1] Until she was 11 years old, she would visit her grandmother's house in Vallejo. Turner was her grandmother's boyfriend, and D.A. called him Papa.

When D.A. was nine years old, Turner touched her inappropriately while she was at her grandmother's house. She did not remember the first or last time it happened, but it happened more than once. At one point, Turner took her to the basement and rubbed her body, including her buttocks, with his hands. She ran upstairs, and although she thought what had happened was wrong, she did not tell her mother.

Turner touched D.A. between her legs, and while she did not remember how many times he touched her in that area, she testified it happened more than once and perhaps more than four times. When she was about 10 years old, Turner was alone with her in the kitchen of her grandmother's house, and he touched her waist and buttocks, squeezed her "boobs," and touched her between her legs. There were also times when appellant took her clothes off and touched her "with no clothing in between." On at least two occasions, Turner put his finger inside what she called her "private."[2] He may have done this more than 10 times.

D.A. knew the touching was wrong but did not call out and did not tell anyone because she was scared of Turner. In the sixth grade, she had a sex education class at school, and after that she told the teacher and her school principal about the touching because she was tired of hiding it. D.A. then told her mother, but was afraid of what her grandmother would say. She talked to a police officer about the touching and told him the truth. She was also taken to the Multi–Disciplinary Interview Center, where she spoke to forensics interviewer Nancy DiGiovanni. At trial, a DVD of that interview was played for the jury. D.A. was 11 years old at the time of the interview.

D.A. testified that she tried to forget the incidents. At trial she was nervous, upset, and scared. When testifying, she found the incidents hard to remember and discuss, but she said she was being as honest as she could.

D.A.'s mother, R.L., testified that she used to take her kids to her mother's house in Vallejo. Her mother was living with Turner, who was R.L.'s stepfather. D.A. was eleven years old when her mother learned about the incidents from an assistant principal at D.A.'s school. R.L. had never before seen D.A. crying like she was when R.L. went to the school to bring her home on May 13, 2011. D.A. never told her mother what happened before the assistant principal phoned her. R.L. knew Turner had issues with the law, but she was

---

[1] At the time of trial in June 2012, D.A. was 12 years old.

[2] In response to the prosecutor's questioning, D.A. explained she used the word "private" to describe "the part between her legs[.]"

2

unaware of his prior conviction for touching children until after D.A. went to the police department.

On May 17, 2011, R.L. brought D.A. to the police station in Vallejo, where they spoke to Officer Robert Herndon. D.A. told Herndon that about one and a half years ago her grandfather, Papa, had called her into the bedroom where she sat on the bed and he touched her breasts and her crotch area over her clothing. It happened about 10 more times and progressed to skin-to-skin contact and digital penetration of the girl's vagina after Turner pulled down her panties. D.A. was crying, and it was hard for her to tell what happened. She told the officer it had taken her a long time to report the incidents because she was scared. D.A. said she had recently taken a class in sex education and learned the importance of reporting sexual assaults. Officer Herndon forwarded the initial report to the Investigations Unit, to a team that deals with sexual assaults against children.

Officer John Garcia was assigned to the case after Officer Herndon took the initial report. On cross-examination at trial, Officer Garcia testified he had made the decision not to have a Sexual Assault Response Team (SART) nurse perform an examination of D.A. The prosecution objected when defense counsel began asking about the breaking of the hymen, because Officer Garcia was not a qualified expert on the subject. The trial court sustained the objection, and defense counsel continued questioning Officer Garcia on his decision not to request a SART examination. Garcia explained that he did not request a SART examination because such examinations are worthwhile only if performed 48 to 72 hours after the occurrence. He was asked whether a female's hymen could be broken in sexual assaults and whether the pain D.A. had reported could be due to obliteration of her hymen. Garcia testified that he believed the hymen could be damaged not just by digital penetration but also by diving or swimming, although he admitted he was not an expert on the hymen.

The following morning, outside the presence of the jury, the prosecution indicated its intention to call a SART expert in rebuttal to respond to defense counsel's questions regarding the effect of digital penetration on the hymen and Officer Garcia's decision not to request a SART examination. After defense counsel said he would object to the proposed expert testimony, the trial court decided the rebuttal witness would not be allowed to testify. The prosecutor then asked to recall Officer Garcia so he could correct his earlier testimony concerning how the hymen could be obliterated based upon research the officer had performed the night before. Defense counsel objected that the research was hearsay, but the trial court allowed the testimony subject to a hearsay and [Confrontation Clause] objection.

Officer Garcia was recalled to testify in the prosecution's rebuttal case. He stated that after his testimony the previous day, he had consulted a very well-known SART nurse about whether the hymen could be obliterated by diving. She explained to him that the hymen is a membrane that partially covers the opening of the

3

> vagina and it cannot be obliterated. The nurse told Garcia that if an 11–year–old girl's vagina were digitally penetrated, there was a very slim likelihood of injury to her hymen unless there was bleeding; without bleeding, the injury would probably be minimal. Garcia testified he had told the nurse that at least a month had elapsed between the last alleged act of digital penetration and D.A.'s report, and the nurse responded that in such a case there would be only about a 10 percent chance of finding an injury to the hymen because it would repair itself very quickly. Even in the 10 percent of examinations where there was evidence of injury, it would not prove that a sexual assault occurred. The nurse indicated, however, that despite this she would recommend a SART examination in every single case.
>
> The parties stipulated that on August 26, 1993, Turner was convicted of a violation of Penal Code section 288, subdivision (b), for lewd acts with a minor by force or fear.
>
> On June 20, 2012, the jury found Turner guilty of three counts of lewd acts upon a child in violation of Penal Code section 288, subdivision (a)...

ECF No. 18-4 at 162-65.

The Court of Appeal affirmed judgment, id. at 172, and the California Supreme Court denied petitioner's request for review of that decision. ECF No. 18-4 at 175.

II. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Wilson v. Corcoran</u>, 562 U.S. 1, 5 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.2d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

/////

/////

/////

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;
>
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). The California Court of Appeal's decision on direct appeal (ECF No. ECF No. 18-4 at 161) is the last reasoned state court decision with respect to petitioner's claims.

/////

/////

The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

III. Petitioner's Claims

    A. Admission Of Prior Conviction

Jurors were informed, over defense objection, that on August 26, 1993, petitioner was convicted of lewd acts with a minor by force or fear. Petitioner claims admission of this evidence rendered his trial "fundamentally unfair," thereby violating his right to due process under the Fourteenth Amendment, because no permissible inferences were to be drawn from the evidence, only prejudicial ones.

On direct appeal, the California Court of Appeal found admission of the evidence was proper under California law to prove "disposition to commit the charged offense." ECF No. 18-4 at 165-66. The Court of Appeal also indicated that the United States Supreme Court "has not ruled on the issue." Id. at 165.

The Supreme Court has indicated "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Payne v. Tennessee, 501 U.S. 808, 825 (1991). However, Supreme Court has never specifically found that admission of irrelevant or overly prejudicial evidence rendered a trial in a state court fundamentally unfair. See Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Further, the Supreme Court has held that it is an open question "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." Estelle v. McGuire, 502 U.S. 62, 75 n. 5 (1991).

In light of the foregoing, the court cannot find that the Court of Appeal's decision rejecting petitioner's claim is contrary to Supreme Court authority. The Court of Appeal did not apply a rule different from the governing law set forth by the Supreme Court, nor decide a case differently than the Supreme Court has when presented with materially indistinguishable facts.

////

Also, the Court of Appeal's rejection of petitioner's claim is not the result of an objectively unreasonable application of Supreme Court authority as the Supreme Court has specifically held that whether propensity evidence akin to the evidence challenged here can render a trial fundamentally unfair is a question the Court has not yet addressed.

For these reasons, and because the Court of Appeal's rejection of petitioner's claim is not based upon an unreasonable factual determination, petitioner's claim concerning the admission into evidence of his prior conviction for lewd acts with a minor by force or fear is barred by 28 U.S.C. § 2254(d).

### B. Hearsay

In his second claim, petitioner asserts the admission of Officer Garcia's testimony presented during the prosecution's rebuttal regarding Garcia's conversation with the SART nurse violated petitioner's Sixth Amendment right to confront his accusers and his right to a fair trial under the Due Process Clause. Respondent does not argue that the testimony was properly admitted. Rather, respondent argues that the error in admitting the testimony does not warrant habeas corpus relief because the error did not have "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). Generally speaking, before an error occurring at trial can provide the basis for federal habeas corpus relief, the petitioner must show that the error had "substantial and injurious effect or influence in determining the jury's verdict," or, in other words, the error resulted in "actual prejudice." Id. at 637.

The California Court of Appeal found admission of Officer Garcia's hearsay testimony harmless beyond a reasonable doubt:

> "'Confrontation clause violations are subject to federal harmless-error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24.' [Citation.] We ask whether it is clear beyond a reasonable doubt that a rational jury would have reached the same verdict absent the error. [Citation.]" (*People v. Loy* (2011) 52 Cal.4th 46, 69–70 (*Loy*).) Turner contends the admitted error was prejudicial, while the People argue it was harmless. We agree with the People, for as we explain below, the error was harmless under the *Chapman* test.
>
> The evidence against Turner was strong. As detailed in our

7

statement of facts, the victim testified that Turner had engaged in inappropriate physical contact with her numerous times over a period of years. There was no dispute that the victim frequently visited her grandmother's house, where Turner was living, and that he therefore had access to her. In addition, Turner's conviction for a prior sex offense was evidence of his propensity for such behavior.

Turner's case was built largely on an attack on both the victim's credibility and the adequacy of the police investigation, as well as on an effort to explain the circumstances leading to his plea to the prior sex offense. (See *People v. Barba* (2013) 215 Cal.App.4th 712, 743 (*Barba*) [looking to defense theory of case in performing harmless error analysis].) In this court, he argues admission of this hearsay testimony was prejudicial because the evidence against him was weak, citing inconsistencies in the victim's testimony and the lack of other evidence of abuse. We must reject this argument. As our Supreme Court observed in *Falsetta*, "[b]y their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often . . . requires the trier of fact to make difficult credibility determinations." (*Falsetta*, *supra*, 21 Cal.4th at p. 915.) Thus, it is unsurprising that the evidence against Turner consisted chiefly of the uncorroborated testimony of a 12–year–old girl, but that fact alone does not render the evidence against Turner weak.

Moreover, when we consider the record as a whole, it is clear the challenged hearsay did not play a major role in the trial. (See *Loy*, *supra*, 52 Cal.4th at p. 70 [error harmless where improperly admitted testimony "was not particularly important to the prosecution case"].) The prosecutor does not appear to have mentioned the testimony at issue in either his closing or rebuttal argument. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1160 [improper admission of videotape harmless beyond a reasonable doubt where it was not emphasized to jury]; *Barba*, *supra*, 215 Cal.App.4th at p. 744 [fact that improperly admitted report was not focus of parties' arguments to jury supported finding error was harmless].) Defense counsel made only one brief allusion to the matter in his lengthy closing, when he argued that Detective Garcia had "called the forensic expert last night after his testimony yesterday to check whether or not he did the right thing in not having an evaluation. It's easy to do an investigation if you don't do anything."

Given this argument, Garcia's testimony that the SART nurse had said she would do an examination in every single case likely actually *helped* the defense, as it supported the defense theory that the investigation had been inadequate.[3] (See *Loy*, *supra*, 52 Cal.4th at p. 70 [finding harmless error where portion of improperly admitted testimony actually "aided defendant"].) This argument

---

[3] Turner's trial counsel used this to his advantage by arguing to the jury that Garcia simply "decided, without consulting forensic experts, not to have any testing done to see if there was some physical evidence of a digital penetration . . . ."

8

> followed defense counsel's extensive cross-examination of Garcia about the claimed inadequacies in the investigation. (*Ibid.* [impeachment of improperly admitted testimony on cross-examination helped render error harmless].) Thus, the defense had a full opportunity to present this theory to the jury, and it is difficult to see how exclusion of the challenged hearsay could have led to a different result. (Cf. *People v. Cooper* (1991) 53 Cal.3d 771, 818 [where defendant was permitted to present all facts supporting argument that police investigation was incompetent, additional evidence "would not reasonably have produced a significantly different impression of the witnesses' credibility"].)
>
> Finally, although the jury sent two notes to the court asking about other aspects of the case, they asked no questions about this testimony. (*People v. Livingston*, *supra*, 53 Cal.4th at p. 1160 [improper admission of videotape was harmless where jury asked no questions about it and requested no readback of testimony].) Under these circumstances, we conclude it is clear beyond a reasonable doubt that a rational jury would have reached the same result absent the error. [Footnote omitted.] (*Loy*, *supra*, 52 Cal.4th at pp. 69–70.)

ECF No. 18-4 at 169-171.

After review of the record, the court finds the Court of Appeal's decision that an error in the admission of Officer Garcia's hearsay testimony was harmless beyond a reasonable doubt is not contrary to Supreme Court authority as the Supreme Court has never come to a different result when presented with materially indistinguishable facts. Furthermore the decision does not involve an unreasonable application of Supreme Court precedent, nor an unreasonable determination of the facts. Considering this, the court is precluded by 28 U.S.C. § 2254(d) from finding that the admission of the hearsay testimony resulted in "actual prejudice" as is required under Brecht (requiring that there exist a reasonable probability the error contributed to the verdict is a lower threshold than requiring the establishment of actual prejudice). See Brecht, 507 U.S. at 637-38.

### C. Cumulative Effect

Finally, petitioner argues that the cumulative effect of the errors described by him in his petition operated to deny petitioner a fair trial as demanded under the Due Process Clause. As indicated above, the only error presented by petitioner concerns the hearsay testimony of Officer Garcia. Therefore, there is no basis before the court for a "cumulative error" argument.

/////

IV. Conclusion

For all of the foregoing reasons, the court will recommend that petitioner's petition for a writ of habeas corpus be denied, and this case be closed.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 26, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

1
turn2356.157